Submitted on record and briefs October 16, 1980, reversed and remanded April 13, respondent Strasheim's reconsideration denied May 21, respondent Lane County's reconsideration denied June 4, petitions for review denied July 21, 1981 (291 Or 368)

HILLIARD,
*Petitioner,*

*v.*

LANE COUNTY COMMISSIONERS et al,
*Respondents.*

(LUBA No. 79-012, CA 17776)

626 P2d 905

Muriel W. Hilliard, Florence, filed the brief pro se for petitioner.

William A. Van Vactor, County Counsel, and Cheyenne Chapman, Special Counsel, Eugene, filed the brief for respondent Lane County Commissioners.

David B. Williams, Eugene, filed the brief for respondent Jerry Strasheim.

No appearance for respondent Land Use Board of Appeals.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

**JOSEPH, P.J.**

This is an appeal from a determination by the Land Use Board of Appeals (LUBA) upholding site review approval for a condominium development on ocean front property in Heceta Beach, Lane County. LUBA dismissed petitioner's allegations concerning violation of statewide planning goals on the ground that goal-related issues had been determined in a prior proceeding, the partitioning of the subject property. Petitioner assigns as error the failure of LUBA, in referring the goal-related issues to the Land Conservation and Development Commission (LCDC), to make a recommendation on the merits of those issues and to incorporate LCDC's determination into its (LUBA's) final order.

The underlying dispute centers on the application of statewide planning Goal 18, the relevant part of which is set out in the margin.[1] In the order approving the partition, the county found as follows:

"Because the development site is man-made fill, the site is probably not a dune. Furthermore, there is no indication of regular wave overtopping or undercutting of the site. Development will not adversely affect the beaches, dunes, vegetation or other development.

"If the site is considered a dune on which the goal would prohibit development, an exception to strict and literal application of the goal is appropriate."

Petitioner's appeal to LCDC from the partition approval was dismissed for lack of jurisdiction under former ORS 197.300(1)(d) (repealed Or Laws 1979, ch 772, § 26), because it was not brought by a governmental agency.

In the subsequent site review order, the county stated that the statewide planning goals did not have to be reconsidered in the context of the site review. As an alternative holding, in the event a reviewing body were to require that the goals be addressed, the county supplemented its earlier findings with respect to Goal 18:

---

[1] "(2) Local governments and state and federal agencies shall prohibit residential developments and commercial and industrial buildings on active fordunes [sic], on other fordunes [sic] which are conditionally stable and that are subject to ocean undercutting or wave overtopping, and on interdune areas (deflation plains) that are subject to ocean flooding."

"The site is not a hill or ridge of sand built up by the wind. On the contrary, the site was shaped and filled by man. It is not a dune. If it ever was a dune, it is not active or conditionally stable or subject to wave overtopping or undercutting. But for the existing seawall, the site might be a 'beach' as defined in the Goal."

On review of the site review order, LUBA recommended to LCDC dismissal of the goal issues on the ground that they had been adjudicated in the partitioning. LCDC responded to the recommendation with the following determination:

"The Land Conservation and Development Commission hereby finds that when a jurisdiction takes a Goal 2 exception to Goal 18, and a subsequent decision based on that exception is challenged on the basis of an inadequate exception, the findings of the exception must be examined to determine whether they are adequate to support the exception. The Land Conservation and Development Commission therefore returns the recommendation of the Land Use Board of Appeals in LUBA 79-012 for review consistent with the above determination."[2]

In its final order, LUBA decided, in a footnote, that it need not conduct the review indicated by LCDC because petitioner had not raised the point, and LUBA declined to raise the matter on its own motion.

Respondents Lane County Commissioners and Strasheim, applicant for the development, make two jurisdictional contentions at the outset: (1) the notice of intent to appeal the county's decision to LUBA was not timely filed, and (2) the site review determination made by the Lane County Commissioners is not a "land use decision" subject to review by LUBA.

On the issue of timeliness, under Oregon Laws 1979, chapter 772, section 4(4), petitioner had 30 days from the date of the decision to appeal a land use decision to LUBA. Prior to November 1, 1979, the effective date of the 1979 legislation, petitioner had 60 days to file a writ of review in circuit court under former ORS 34.030. In *Hoffman v. DuPont,* 49 Or App 699, 621 P2d 63 (1980), we

---

[2] This language reflects LCDC's "Umatilla policy," which we have upheld. *See Woodcock v. LCDC,* 51 Or App 577, 626 P2d 901 (1981).

allowed review by LUBA where the notice of intent to appeal was filed after November 1, 1979, but within the 60 days allowed for seeking LCDC review under former ORS 197.300(1)(d). The notice here, although filed more than 30 days after the decision was made on October 3, 1979, was within the 60 days previously allowed, and under *Hoffman* it was timely.

■     With respect to the second jurisdictional point, respondents contend that because site review approval does not affect the use of the land, it is not a "land use decision" within the meaning of Oregon laws 1979, chapter 772, section 3(1):

"(1)   'Land use decision' means:

"(a)   A final decision or determination made by a city, county or special district governing body that concerns the adoption, amendment or application of:

"(A)   The state-wide planning goals;

"(B)   A comprehensive plan provision; or

"(C)   A zoning, subdivision or other ordinance that implements a comprehensive plan; or

"(b)   A final decision or determination of a state agency other than the Land Conservation and Development Commission, with respect to which the agency is required to apply the state-wide planning goals."

After *Alexanderson v. Polk County Commissioners,* 289 Or 427, 434-35, 616 P2d 459 (1980), there is no doubt that individual actions are subject to application of the statewide planning goals during the pre-acknowledgment phase of a county's comprehensive plan. In *Alexanderson,* approval of a minor partition, prior to acknowledgment by LCDC that the comprehensive plan complied with the goals, was held to be a "land conservation and development action" within the meaning of former ORS 197.300. The court reasoned:

"Although ORS 197.015 contains a list of definitions, the statute nowhere defines the key term 'land conservation and development action.' We read 'action' in this context to go beyond the adoption of plans and general ordinances so as to reach action on applications of these general policies to specific tracts of land. This includes minor partitions if the local government has brought them within its subdivision ordinance. LCDC has included the

partition of land in its definition of 'development,' OAR 660-15-000 (Appendix A)."

In this context we perceive no distinction between the terms "land use decision" in the LUBA jurisdictional statute and "land conservation and development action" in the now repealed statute.

The site review here was conducted pursuant to a Lane County ordinance setting forth the purpose, applicability, evaluation criteria and procedures for site review. One of the criteria for site evaluation, set out in the margin,[3] requires that location and design of particular uses be compatible with community facilities, in conformity with the comprehensive plan. The site review approval is an application of an ordinance which implements the comprehensive plan, Oregon Laws 1979, chapter 772, section 3(1), *supra,* and therefore comes within the definition of "land use decision" reviewable by LUBA.

■ Quite separate analytically from the second jurisdictional question is the contention, espoused here by

---

[3] *"Criteria for Site Review Evaluation.* The Planning Director or Board of County Commissioners, as the case may be, shall consider the following minimum criteria as applicable in evaluating site review applications, to ensure that the purpose and requirements of this section are met:

"(1) That the location, design, size, shape and arrangement of the uses and structures are in scale and are compatible with the surroundings.

"(2) That there is a desirable, efficient, and workable interrelationship among buildings, parking, circulation, open space, landscaping, and related activities and uses, resulting in an attractive, healthful and pleasant environment for living, shopping or working.

"(3) That there is no unnecessary destruction of existing healthy trees or other major vegetation, and that due consideration is given to the preservation of distinctive historical or natural features.

"(4) That the quantity, location, height, and materials of walls, fences, hedges, screen planting and landscape areas are such that they serve their intended purpose and have no undue adverse effect on existing or contemplated abutting land use.

"(5) That suitable planting of ground cover or other surfacing is provided to prevent erosion and reduce dust.

"(6) That the location, design and size of the uses are such that the residents or establishments to be accommodated will be adequately served by community facilities and services or by other facilities suitable for the intended uses, *in conformity with the Comprehensive Plan for Lane County."* (Emphasis added.)

respondents and relied upon by LUBA in its decision, that since the statewide planning goals were adequately determined in the prior partitioning of the subject property, the goal-related issues raised in the site review were required to be dismissed. In *1000 Friends v. Clackamas Co. Comm.,* 40 Or App 529, 533-34, 595 P2d 1273, *rev den* (1979), a variance had been granted to allow individual wells in lieu of a community water system for a subdivision. We stated:

"The final contention is that the Board should have applied LCDC Statewide Planning Goal #3 in determining if the variance should have been granted. The argument advanced is as follows: The decision to grant a variance is a land use decision, and is tantamount to approval of the subdivision itself; therefore, approval of the subdivision will allow intrusion of residential units into a rural area, contrary to the exclusive farm use designation of the land underlying the planned subdivision and contrary to Statewide Planning Goal #3.

"The substance of this argument is an attack on the original approval of the subdivision. Goal #3 is concerned with the preservation and maintenance of agricultural land. The land use decision was made at the time the Board granted tentative approval of the subdivision plat. Modification of that plan by a variance must be reviewed on its merits. The proceeding to review a grant of variance cannot be converted into a proceeding to attack the tentative plat collaterally. *Bienz v. City of Dayton,* 29 Or App 761, 566 P2d 904, *rev den* (1977). The decision to allow the subdivision to be served by individual wells rather than one single well does not convert agricultural land to residential, and is not tantamount to approval of the subdivision."

The holding in *Clackamas* does not necessarily mean that statewide planning goals may never be required to be examined more than once in the context of a development prior to LCDC's acknowledgment of the comprehensive plan. Different goals may become relevant at different steps in the planning process. For example, Goal 13, Energy Conservation, refers to lot size, dimension and siting controls, building height, bulk and surface area, which are criteria encompassed in the site review ordinance here but which would ordinarily not be considered in the partitioning decision.

In this case, it is clear that Goal 18 was addressed in the partitioning decision. Petitioner argues that the partitioning order was expressly conditioned on a site review, and thus was not a final decision, but that contention has no support in the record. There is no indication of a change in circumstances since the time of the partitioning which would alter the previous consideration of Goal 18. There is no suggestion that a different siting design or displacement of the residential building planned would avoid the Goal 18 problem. The reason for the Goal 18 issue to be reconsidered in the site review is that the county appeared to base its partitioning decision, at least in' part, on an exception to Goal 18. The policy that allows LCDC to go "behind" a goal decision by a local government which is based on an exception, as in this case, is now established in the law by our decision in *Woodcock v. LCDC,* 51 Or App 577, 626 P2d 901 (1981).

LCDC did not actually apply the policy reflected in its determination, but requested LUBA to review on that basis. Insofar as the record discloses, LCDC had before it only LUBA's proposed order, which would not have permitted the direct application of the policy described in the LCDC determination quoted, *supra* at 2.

LUBA declined to conduct the requested inquiry because petitioner had not raised the "Umatilla policy" which would allow the partitioning decision to be reexamined if an invalid exception to Goal 18 had been taken. LUBA reasoned:

"Upon receipt of LCDC's determination as set out supra at footnote 1, this Board reviewed the appeal with three questions in mind:

"1. Did the petitioner base the challenge of respondent's subsequent decision (site review herein) on the ground that respondent had taken an inadequate exception to Goal 18 in arriving at its original decision (partitioning herein)?

"2. If the answer to question 1 is yes, then is the challenge asserted in the form of an attack on the findings relating to the exceptions process?

"3. If the answers to questions 1 and 2 are both yes, then are the findings of the exception adequate to support the exception?

"A review of the petition for review herein indicates that the answer to the first question is no. Petitioner's only allegation of error regarding Statewide Goal 18 is stated as follows:

" 'Respondent Lane County's decision misapplies Goal 18 and is not supported by substantial evidence.'

"The entire thrust of petitioner's allegation regarding application of Goal 18 was not that respondent erred in deciding the subject property was not a foredune to which Goal 18 applied. Petitioner's brief mention of the Goal 2 exceptions process is stated as an argument that no exception could be or was taken. As is stated at page 10 of the petition for review:

" 'Any application of the exceptions process could not be applied to Goal 18 in this case. Goal 18 clearly provides that exceptions to Goal 18 may be taken only if the proposed development is not residential, commercial or industrial. The record does not indicate that Lane County has attempted to take an exception in this case because: 1) No notice of exception was made as required in Notices of Hearings as required by Goal 2; and 2) Findings do not justify a goal exception.'

"Petitioner did not base the challenge of respondent's site review decision on the ground that Lane County had taken an inadequate exception to Goal 18 in arriving at its partitioning decision. The issue raised as a result of LCDC's determination * * * was not asserted by petitioner and this Board will not raise it on its own motion."

LUBA erred in invoking technical requirements of pleading having no statutory basis. What the Oregon Supreme Court said about LCDC in *Fish and Wildlife Department v. LCDC,* 288 Or 203, 212-13, 603 P2d 1371 (1979) (failure to exhaust administrative remedies not a bar to LCDC review), might well be said of LUBA here:

"In addition, there is another reason why the concept of exhaustion is not appropriate to the present proceeding. LCDC is not in the position of an appellate court whose primary duty is deciding competing interests of litigants but, rather, it is an agency of government charged with monitoring land use decisions of other governmental bodies to make sure established standards are met. It is, therefore, inappropriate, in the absence of statutory direction, that an exercise of this function should be determined by the failure of an interested party to take a procedural step, such as processing an appeal."

Petitioner did attempt in her *pro se* petition for review to attack the prior partitioning as not being a final decision, and she argued that no exception was properly taken "in this case," which fairly should be interpreted to include the partitioning. Furthermore, once LCDC raised the point on *its* own motion, LUBA should have addressed the issue on the merits in incorporating LCDC's determination into its final order.

We conclude that LUBA erred in not applying to the facts of this case the policy expressed in LCDC's determination. That was an error in procedure to the detriment of substantial rights of the petitioner, who was entitled to have her allegations of violation of statewide goals reviewed on the merits by LCDC. Accordingly, we remand the matter to LUBA for it to submit a recommendation on the alleged goal violations to LCDC. Or Laws 1979, ch 772, § 6(1).

Reversed and remanded.