Argued and submitted September 24, 1980, affirmed April 13,
reconsideration denied May 21,
petition for review denied June 23, 1981 (291 Or 151)

# WOODCOCK,
*Petitioner,*

*v.*

# LAND CONSERVATION AND DEVELOPMENT COMMISSION et al,
*Respondents.*

## (LCDC No. 79-045, CA 17571)

626 P2d 901

Daniel F. Hughes, Grants Pass, argued the cause and filed the briefs for petitioner.

Mark J. Greenfield, Portland, argued the cause and filed the brief for respondent Jack C. Oldham.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development Commission. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Duane Wm. Schultz, Grants Pass, waived appearance for respondent Josephine County Board of Commissioners.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

**JOSEPH, P.J.**

This case requires reconciling two provisions of the state land use planning statutes. The first, ORS 197.251(1), authorizes the Land Conservation and Development Commission to grant or to deny acknowledgment that a local government's land use regulatory devices comply with the statewide planning goals; it necessarily contemplates that LCDC might review local land use matters for compliance with the goals long after those decisions became final at the local level. The second, former ORS 197.300(2), required that an appeal to LCDC alleging that a specific local government land use decision violated the statewide planning goals had to be filed with LCDC "not later than 60 days after" the local government action.[1]

Petitioner owns rural, undeveloped land in Josephine County on which he wishes to construct a small shopping center. The property is agricultural land within the meaning of Goal 3, which means, generally, that it can only be zoned for exclusive farm use. Aware of that impediment to his development plans, petitioner decided to apply first for a comprehensive plan amendment and, if that was successful, to apply subsequently for a zone change.

The first step was concluded in December, 1978, when the Josephine County Board of County Commissioners approved petitioner's requested comprehensive plan change. At that time the Commissioners also adopted an "exception" to Goal 3 for the subject property.[2] Petitioner

---

[1] Former ORS 197.300 was repealed by Oregon Laws 1979, chapter 772, section 26. At the same time Oregon Laws 1979, chapter 772, section 4 was enacted; it provides that appeals from specific local government land use decisions are to be filed with the Land Use Board of Appeals "not later than 30 days after the date the decision sought to be reviewed becomes final." Or Laws 1979, ch 772, § 4(4).

Despite these changes created by the 1979 statute, the tension between ORS 197.251(1) and former ORS 197.300(2) is the same as that between ORS 197.251(1) and Oregon Laws 1979, chapter 772, section 4(4). Therefore, our analysis of the former statute is also applicable to the present statute.

[2] Goal 2, Part 2, permits local governments to take an "exception" to the statewide planning goals, *i.e.,* to plan and zone land in ways other than required by the state goals. Goal 2, Part 2, imposes significant specific requirements for an exception:

"When, during the application of the statewide goals to plans, it appears it is not possible to apply the appropriate goal to specific properties or

then applied for a zone change. In August, 1979 — some eight months after adoption of the comprehensive plan amendment and the exception to Goal 3 — the Commissioners approved petitioner's requested zone change. Those two actions were, however, related because the *August,* 1979, *zone* change findings incorporated by reference the *December,* 1978, *plan* change findings.

An objecting neighbor then initiated this proceeding before LCDC. The appeal to LCDC was filed within the 60 days allowed by former ORS 197.300(2), at least to the extent that it challenged the August, 1979, zone change; and it appears to us from the LCDC review petition that only the August, 1979, zone change was expressly challenged by the appeal. LCDC determined that in order to review the August, 1979, zone change it was necessary also to review the underlying December, 1978, plan change on which the subsequent zone change was based in part. It should be noted that Josephine County's comprehensive plan had not yet been acknowledged.

On the merits, LCDC reversed, ruling that the December, 1978, exception to Goal 3 did not comply with the statewide planning goals and that with its foundation gone, the August, 1979, zone change was also invalid. Petitioner appealed to this court. He does not challenge LCDC's decision on the merits. Rather, he argues only that LCDC lacked jurisdiction to review the December, 1978,

---

situations, then each proposed exception to a goal shall be set forth during the plan preparation phases and also specifically noted in the notices of public hearing. * * *

"If the exception to the goal is adopted, then the compelling reasons and facts for that conclusion shall be completely set forth in the plan and shall include:

"(a) Why these other uses should be provided for;

"(b) What alternative locations within the area could be used for the proposed uses;

"(c) What are the long term environmental, economic, social and energy consequences to the locality, the region or the state from not applying the goal or permitting the alternative use;

"(d) A finding that the proposed uses will be compatible with other adjacent uses."

plan amendment and exception because no appeal from those actions was filed within the 60-day limit of former ORS 197.300(2).

The two statutes in question are integral parts of the statutory schema for land use control. ORS 197.251(1) (respecting LCDC acknowledgment of local land use plans, ordinances and regulations) establishes both that local governments must comply with the statewide planning goals in their comprehensive plans, implementing ordinances and regulations, and that the state agency, LCDC, is to determine whether the local actions comply with the goals. When requesting LCDC acknowledgment, a local government cannot establish compliance with state law merely by showing that its plan and implementing ordinances were adopted more than 60 days ago. Regardless of how protracted the local planning process might be, all of the multitude of discrete and general decisions that make up that process are subject to LCDC review as a precondition for acknowledgment.

On the other hand, a finite time limit on initiating appeals from specific land use decisions, such as the 60 days provided in former ORS 197.300(2), promotes stability and repose; that is, once the time for appeal has passed, interested persons can rely on the finality of a given land use decision in determining their courses of action. *Cf. Brooks v. Dierker,* 275 Or 619, 552 P2d 533 (1976); *1000 Friends v. Clack. Co. Comm.,* 40 Or App 529, 595 P2d 1273, *rev den* (1979).

LCDC has attempted to implement these potentially conflicting considerations by adopting what is known as its "Umatilla policy":

"Once an exception is taken * * * a city or county is entitled to rely upon that exception prior to the acknowledgment of the comprehensive plan for purposes of making decisions within the area [for] which the exception has been taken. However, if a decision within the area is challenged on the basis that no valid exception has been taken, then the city or county, or LCDC on review, must examine the exception taken and determine whether the findings are adequate to support the exception." *City of Umatilla v. Umatilla County et al,* LCDC 78-029, Final Order at 2.

The opinion of the hearing officer in this case, which was adopted by LCDC, elaborated:

"The 60-day limit [of former ORS 197.300(2)] is similar to the time limits for appealing writs of review and for appealing to the Court of Appeals from agency rulemaking and contested case decisions. See ORS 34.030, 183.400(1), 183.484(2). * * *

"However, these time limits don't always provide absolute certainty. For example, a rule which is not appealed upon its adoption may be challenged and upset later on by someone who is adversely affected by its specific application. See ORS 183.400(2). It is no defense to such a challenge that the time for [directly] challenging the rule * * * has run.

"A pre-acknowledgment land use decision is also subject to later challenge. [ORS ch 197 provides] for a 'compliance acknowledgment' procedure under which the Commission reviews all planning, zoning and other land use ordinances or regulations of the local jurisdiction and issues an order either granting or denying acknowledgment. A denial is a declaration that some or all of the rules under review conflict with statewide goals and must be changed to bring them into line. See ORS 197.251.

"In a very real sense, therefore, the plan amendment and exception granted by Josephine County in 1978 remain open to challenge until acknowledgment. The County has not yet achieved that acknowledgment. Until it does, a degree of uncertainty will continue to prevail. Counties which wish to remove that cloud from their planning horizon would be well-advised to obtain early acknowledgment."

Petitioner's attack on LCDC's analysis in this court is long on hyperbole but short on law. For example, he complains:

"It is apparently the Commission's position that *any* land use planning change since 1973 is subject to being set aside by them for any alleged goal violations regardless of how much time has passed since the local land use planning decision."

That is not an accurate paraphrase of LCDC's "Umatilla policy." That policy does not permit a belated collateral attack on "any" and every prior land use decision; it limits that possibility to situations where the earlier land use decision involved the taking of a Goal 2, Part 2 exception.

The balance of petitioner's argument merely repeatedly invokes the 60-day time limit of former ORS 197.300(2): *e.g.,* "Have we truly arrived at the point that an *express* legislative mandate can be completely and totally ignored?"

What petitioner does not appreciate or clearly face up to is that this case involves two express legislative mandates that are not completely consistent on their faces — LCDC's ORS 197.251(1) acknowledgment authority to review local land use plan and zone designations without regard to when they were adopted versus LCDC's former ORS 197.300(2) review authority, which is limited by the 60-day limitation rule. *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980), distinguishes between "terms of complete legislative expression" and "delegative terms," defining the former in this way:

> "When applying [statutory] terms of complete legislative expression, it is the function of the agency to determine initially which decision is within the legislative policy * * *.
>
> "* * * * *
>
> "If the statute requires interpretation, however, the interpretation and the agency's rationalization of it are properly a part of the reasoning of the order. Thus, under ORS 183.470, the order itself is the instrument by which an agency demonstrates that a particular interpretation or application of a statute is within a generally expressed legislative policy.
>
> "* * * * *
>
> "The dispositive question of law on [judicial] review * * * is whether the agency action is within the legislative policy which inheres in the statutory term." 290 Or at 226-227.

"Delegative terms," on the other hand fit this rubric:

> "The delegation of responsibility for policy refinement under such a statute [*i.e.,* one containing "delegative terms"] is to the agency, not to the court. The discretionary function of the agency is to make the choice and the review function of the court is to see that the agency's decision is within the range of discretion allowed by the more general policy of the statute." 290 Or at 229.

*Springfield* and the cases cited therein involved the interpretation of specific statutory words or phrases. Here, by

contrast, the required interpretation involves an entire statutory scheme. However, we see no reason why the *Springfield* analysis should not be applied in this context, and it leads to the conclusion that we are dealing with terms of complete legislative expression.

The part of the hearing officer's opinion adopted by LCDC and quoted above stated as the fundamental reason for LCDC's "Umatilla policy":

"* * * A pre-acknowledgment decision is *** subject to later challenge [during acknowledgment proceedings]. *** A denial [of acknowledgment] is a declaration that some or all of the rules under review conflict with statewide goals and must be changed * * *.

"In a very real sense, therefore, the plan amendment and exception granted by Josephine County in 1978 remain open to challenge until acknowledgment. * * * [Until acknowledgment], a degree of uncertainty will continue to prevail. Counties which wish to remove that cloud from their planning horizon would be well-advised to obtain early acknowledgment."

That rationale depends upon the validity of an unstated premise: Until acknowledgment is had by a local government, the statewide goals *must* be properly applied locally in every discrete, as well as general, land use planning activity, and LCDC is charged generally with making sure that is done, regardless of the local technique used. We have already said that. *See Willamette University v. LCDC,* 45 Or App 355, 608 P2d 1178 (1980). An agency policy was required in the absence of precise legislative direction about how LCDC is to treat pre-acknowledgment local decisions. Not only does the reasoning used support the policy adopted, we do not believe LCDC could have adopted any other policy.

It was argued here that former ORS 197.300(2) reflected a general policy of finality-and-repose intended to protect all local decisions from attack unless that attack was timely made. If that view were taken, then it would follow that the legislature intended LCDC to limit its review of local pre-acknowledgment actions only to those brought to it strictly within the time limits; all else would merely be history. We believe no conflict between the two statutory provisions is actually presented by this case.

Petitioner chose to proceed in two steps: first the plan change, then the zone change. But actual development could not proceed until the zone change, and that was timely challenged. While the zone change followed from the plan change *(see Baker v. City of Milwaukie,* 271 Or 500, 506, 533 P2d 772 (1975)), and while the efficacy of the challenge to the zone change depended upon being able to reach the plan change, we see no violation of the rest-and-repose policy in that reaching. Petitioner created the hiatus by moving in two steps. Under the ORS chapter 197 scheme of things, when an exception has been taken, the time for rest-and-repose can only come after the last prerequisite for development has been achieved.

Affirmed.